Macloon vs. Smith, imp.

*April 1 — April 20, 1880.*

*(1-3) Duress of estate: Fraud: Pleading. (4, 5) No days of grace on interest. (6) Parties to foreclosure: Estoppel of mortgagor to allege title paramount in third person.*

1. In foreclosure of a real estate mortgage, securing a note, the answer, to show that the instruments were executed under duress, averred that

plaintiff, holding the title to the property, refused to convey it as he had agreed, unless defendant would include in the note and mortgage (which were to be executed by him to plaintiff simultaneously with such conveyance) certain unjust and fraudulent claims for moneys unjustly and fraudulently expended upon the property, etc. The answer, however, showed that, by previous written agreement between the parties, plaintiff was to advance moneys for the erection of a building on the premises, and defendants were to execute a note and mortgage to secure repayment of such moneys; and that, after an accounting between the parties, the instruments in suit were executed pursuant to such agreement. *Held*, that the answer shows no defense.

2. Said written agreement provided that if the mortgagor should be unable to get a certain judgment set aside and discharged, and plaintiff should be of opinion that it was necessary, for the purpose of protecting his interest under certain leases, that the judgment should be discharged of record, he might satisfy it, and include the amount in the note and mortgage which were to be executed to him. Plaintiff having paid such judgment, and the amount having been included in the instruments in suit: *Held*, that mere general averments in the answer, that the mortgagors permitted its inclusion under "duress and compulsion," etc., do not show that they were entitled to have the instruments reformed by omitting the amount of such judgment.

3. The answer further avers that, "under like duress and compulsion," defendants were compelled to allow plaintiff to include in the note and mortgage certain expenses in finishing off said building, which are alleged to have been unnecessary; but no reason is shown for defendants' allowing plaintiff's claim for such expenses in the accounting between them; nor are any further facts alleged to show that the claim was fraudulent, or that the execution of the instruments for an amount including such claim was done under duress. *Held*, insufficient to impeach the instrument for fraud or duress.

4. On mere installments of *interest*, the debtor is not entitled to days of grace.

5. Where, therefore, interest alone was due, by the terms of the note, on the first day of a certain month, and, on default of payment thereof within ten days after it became due, the mortgagee had his option to declare the whole mortgage debt due, notice of his option given on the twelfth of said month was not premature.

6. A mortgage may be foreclosed as against the mortgagors without making one who claims title paramount a defendant to the suit; and mortgagors who have covenanted to defend the title against all adverse claims, are estopped to allege title paramount in a third person.

APPEAL from the Circuit Court for *Rock* County.

Action to foreclose a mortgage given by *J. Maurice Smith* and wife to *William Macloon.*

I.    July 31, 1876, *J. Maurice Smith* entered into an agreement with the plaintiff, which recited that the said *Smith* and one Ford were joint owners, each owning an undivided one-half of certain premises ; that they had made a contract with the United States to erect a building on such premises, and to rent a portion of the same to the United States, and a similar contract to rent a portion of said building to the city of Janesville, and that a judgment of $750 had been recovered and was then in full force against said *J. M. Smith*, in the circuit court of the United States for the western district of Wisconsin.    It then provided that said *J. M. Smith* should without delay convey his interest in the premises to the plaintiff; that plaintiff and Ford should erect the building for the use of the United States; that plaintiff should keep an account of all moneys necessarily paid out by him in the erection and furnishing of said building; that upon the completion of the building the plaintiff and Ford should execute leases to the United States and the city of Janesville; that the plaintiff should then reconvey to *J. M. Smith* the undivided one-half of the premises, and at the same time make and present to said *J. M. Smith* a statement of moneys paid out and to be paid out by him in the construction and furnishing of the building, with interest on sums paid out at the rate of ten per cent. per annum from the date of payment; that said *J. M. Smith* at that time should execute and deliver to plaintiff his promissory note for the amount shown by said statement, payable in five years with interest at ten per cent. per annum, payable quarter-yearly, and also a mortgage, to secure said note, upon said undivided one-half of the premises described; that, as further security for the amount mentioned in said note, the plaintiff should hold an undivided one-half interest in the

leases executed by himself and Ford to the United States and the city of Janesville, and should collect one-half the rents, and out of such rents pay the amount due for interest on said note and mortgage and for taxes, assessments and insurance, paying the residue of said rents to *J. M. Smith;* that in case *Smith* should be unable to procure the above mentioned judgment of $750 to be vacated or discharged, and plaintiff should be of the opinion that it was necessary for the purpose of procuring and making said leases, he might have said judgment discharged of record, and the amount paid by him for that purpose should be included in the statement above mentioned, and in said note and mortgage, in the same manner as though such sum had been paid out in the construction of said building.

II.   In pursuance of such agreement, *J. M. Smith* and his wife and one Mary C. Smith executed and delivered to plaintiff a warranty deed of an undivided one-half of the premises, dated July 31, 1876; plaintiff and Ford erected and completed the building, and leased a portion thereof to the United States; plaintiff then presented to *J. M. Smith* a statement of the moneys paid out by him on account of said building, to the amount of $6,663.23, and reconveyed the premises to *J. M. Smith* by warranty deed dated February 1, 1878; *J. M. Smith* accepted this deed, and, on the same day, executed and delivered to plaintiff his note for $6,663.23, payable in five years, with interest at ten per cent., payable quarter-yearly on the first days of January, April, July, and October; and, to secure this note, *J. M. Smith* and his wife, on the same day, executed and delivered to plaintiff the mortgage in suit, of the undivided half of the premises.   The mortgage contains the following provision:   " In case of the nonpayment of any sum of money (either of principal, interest, insurance or taxes) at the time or times when the same shall become due agreeably to the conditions of these presents or of the aforesaid note, or any part thereof, or within ten days thereafter, the whole

amount of said principal sum shall, at the option of said mortgagee, be deemed to have become due," etc.

July 12 and 13, 1878, the plaintiff served upon the mortgagors notice in writing that there was due and unpaid on said note and mortgage, July 1, 1878, the sum of $87.16, and that, the same not having been paid within ten days thereafter, the plaintiff elected and declared the whole amount secured by said note and mortgage to be due.

III. This action was commenced August 3, 1878. The complaint is in the usual form. The parties defendant were *J. Maurice Smith* and wife, the mortgagors, Mary B. Smith, a subsequent mortgagee, and Franklin ,Whitaker, a judgment creditor. The defendant *J. Maurice Smith* alone answered. The answer consists of, 1. A counterclaim and defense; and 2. A further and separate defense.

(1.) The former admits the making of the note and mortgage of February 1, 1878, but denies that the defendant was at that time indebted to the plaintiff in any greater sum than $4,861. It further alleges that such indebtedness arose upon the agreement of July 31, 1876 (which is set forth in full); that by such agreement the defendant "had agreed to convey or cause to be conveyed the lands described in the complaint, to the plaintiff, upon certain trusts and as security for moneys advanced or to be advanced; and that the plaintiff, so holding the title to said lands, refused to convey as he had agreed to do, unless defendant would include in said note and mortgage the unjust and fraudulent claims for money unjustly and fraudulently expended or claimed to be, and so, by duress of estate and not of his own free will, defendant was forced to include in said note and mortgage the sum of $1,802.25, or thereabouts, in excess of the amount actually owing by the said defendant on the said agreement; that said note and mortgage were made to extricate the title from the unjust grasp of the plaintiff, and as the only means of so doing except by litigation;" that a part of the said $1,802.25 was the

sum of $1,002.25 paid to satisfy the judgment against defendant mentioned in the agreement; that such judgment was void, and the payment thereof by the plaintiff unjust and fraudulent; but that, under duress and compulsion, the defendant included the sum so paid in the note and mortgage; that, "under like duress and compulsion," he included therein the unnecessary expense of a marble floor in said building, and other sums wasted in finishing the same, amounting in the aggregate, including said sum of $1,002.25, to $1,802.25. It further alleges that, in pursuance of the agreement of July 31, 1876, the plaintiff had collected rents more than sufficient to pay all insurance, taxes and assessments on said premises, and interest on said note and mortgage; that he had neglected and refused to render any account of the rents and profits so received or of the moneys paid out by him for insurance, taxes, etc. It further alleges that the agreement and deed of July 31, 1876, together constituted a mortgage; that the deed of February 1, 1878, from plaintiff to defendant, was in effect only an assignment of such mortgage, and vested no estate in lands in defendant beyond a mere mortgage lien; and that the mortgage of February 1, 1878, was and is in law a mortgage on said prior mortgage, to secure the purchase money on the sale and conveyance of said prior mortgage lien. It further alleges that the interest on the note and mortgage of February 1, 1878, payable, by the terms thereof, July 1, 1878, being entitled to grace, was not due until July 4, 1878; and that the election of plaintiff to have the whole sum become due, having been made within ten days after July 4, was premature and of no effect.

(2.) The second and separate defense alleges that at the time of the agreement and deed of July 31, 1876, Mary C. Smith was the owner of the premises in question; that on the 17th day of March, 1877, the defendant and his wife executed and delivered a warranty deed of said premises to Mary C. Smith, which was recorded on the same day; that the deed of Febru-

ary 1, 1878, from plaintiff to defendant, was made in violation of the right and against the remonstrance of Mary C. Smith; that said Mary C. Smith was, at the time of the commence-ment of this action, and still is, the owner of said premises; and that, she not being a party to the action, "the court has not jurisdiction of the subject matter of the action to render a judgment of foreclosure and sale."

IV. Upon the trial, the court excluded all testimony tend-ing to prove the counterclaim, and all testimony upon the question whether or not Mary C. Smith should be a party to the suit.

The court found the facts substantially as stated in para-graphs I and II, above, and further, that there was due on the note for interest, July 1, 1878, the sum of $136.50, after de-ducting all payments of rent to that date, and that, by reason of the service of the notice by plaintiff on the mortgagors, July 12 and 13, 1878, the whole sum became due and payable. From a judgment of foreclosure and sale in favor of the plaintiff, *J. Maurice Smith* appealed.

*A. Hyatt Smith*, for appellant:

For the purposes of this appeal the answer will be held conclusive upon all facts with regard to which testimony was excluded. *Sheridan v. R. R. Co.*, 36 N. Y., 39; *People v. Roe*, 1 Hill, 470; *Kelly v. Dutch Church*, 2 id., 105.

1. The court erred in ruling out the testimony offered in support of the counterclaim and defense. It is alleged therein that the note and mortgage were made under compulsion by duress of estate. This renders the note and mortgage void, and is therefore a good answer. Assize, 5 Year Book, fol. 72, pl. 14; *Collins v. Westbury*, 2 Bay, 211; *Harmony v. Bingham*, 12 N. Y., 99; *Astley v. Reynolds*, 2 Strange, 915; *Smith v. Bromley*, 2 Doug., 696, n; *Knibbs v. Hall*, 1 Esp., 84; *Cartwright v. Rowley*, 2 id., 723; *Shaw v. Woodcock*, 7 B. & C., 73; *Atlee v. Backhouse*, 3 M. & W., 633, 649; *Chase v. Dwinal*, 7 Greenl., 134; *Fleetwood v. City*, 2 Sandf., 475;

*Clinton v. Strong*, 9 Johns., 370; *Ripley v. Gelston*, id., 201; *Briggs v. Boyd*, 56 N. Y., 289; *Scholly, Ex'r, v. Munford*, 60 id., 498; *Baldwin v. L. & G. W. S. S. Co.*, 74 id., 125. If not void *in toto*, the note and mortgage should at least be reformed as to the amounts fraudulently and unjustly included therein. The giving of the note was not an extinguishment of the account, and did not conclude the defendant from inquiring into the consideration between the parties to it. *White v. Dumpke*, 45 Wis., 457. Certain sums having been included in the note and mortgage under duress, those securities will be reformed upon the same principle that money paid under like circumstances can be recovered back. *County Comm'rs v. Parker*, 7 Minn., 267; *Hubbard v. Brainard*, 35 Conn., 563; *Clinton v. Strong*, 9 Johns., 370; *Severance v. Kimball*, 8 N. H., 386; *Tutt v. Ide*, 3 Blatchf., 249; *L. & I. R. R. Co. v. Pattison*, 41 Ind., 312; *Spaids v. Barrett*, 57 Ill., 289; 11 Am., 10; *Hendy v. Soule*, Deady, 400; *Bailey v. Goshen*, 32 Conn., 546; *Block v. U. S.*, 8 Ct. of Cl., 461; *Robinson v. Ezzell*, 72 N. C., 231; *Ogden v. Maxwell*, 3 Blatchf., 319; *Moulton v. Bennett*, 18 Wend., 586; *Britton v. Frink*, 3 How. Pr., 102; *Townshend v. Dyckman*, 2 E. D. Smith, 224; *Frye v. Lockwood*, 4 Cow., 454; *Ripley v. Gelston*, 9 Johns., 201. The answer is both counterclaim and defense; and if it does not present a case for the reformation of the mortgage, it clearly sets up facts constituting a defense *pro tanto*.

2. The finding of the court that, by reason of the service of notice of plaintiff's option on the mortgagors, the whole amount secured by the note became due and payable, was erroneous. The installment of interest payable July 1, 1878, was entitled to days of grace. 1 Parsons on B. & N., 374, 404, 407, note *i;* 2 id., 463; Daniel on Neg. Inst., 461; *Coffin v. Loring*, 5 Allen, 153; *Tucker v. Randall*, 2 Mass., 283; *Greenleaf v. Kellogg*, id., 568; *Cooley v. Rose*, 3 id., 221; *Carlon v. Kenealy*, 12 M. & W., 139; *Oridge v. Sherborne*,

11 id., 374; *Bank of Utica v. Wager*, 2 Cow., 766. It did not become due, therefore, until July 4, and the notice, having been served July 12 and 13, less than ten days after the interest became due, was premature and of no effect. Again, plaintiff, having collected rents and paid his own interest and claiming to have expended a part of the money collected for taxes and insurance, could not exercise the right to declare the principal sum due, on failure in the payment of an installment of interest, without first giving notice to defendant of the balance due, and allowing a reasonable time to examine accounts and pay. This, as the answer shows, he neglected and refused to do; and a court of equity will not aid him to declare a forfeiture caused by his own negligence and concealment. *Noyes v. Clark*, 7 Paige, 179; *Mitchell v. Burnham*, 44 Me., 303; *James v. Johnson*, 6 Johns. Ch., 417; *Holridge v. Gillespie*, 2 id., 30; *Clark v. Brown*, 3 Allen, 509; 1 Washb. R. P., Bk. 1, ch. XVI, sec. 1, par. 26.

3. The court erred in excluding testimony tending to establish the second and separate defense. It appears therein that Mary C. Smith was the owner of the fee of the premises, and was therefore a necessary party to this action.

4. The deed of July 31, 1876, together with the agreement to reconvey, constituted a mortgage. *Rogan v. Walker*, 2 Pin., 463; *S. C.*, 1 Wis., 527; *Knowlton v. Walker*, 13 id., 264; *Orton v. Knab*, 3 id., 576; *Plato v. Roe*, 14 id., 453; *Kent v. Agard*, 24 id., 378; *Magoon v. Callahan*, 39 id., 141; *Brinkman v. Jones*, 44 id., 498. The plaintiff acquired thereby no estate in lands, but only a mortgage lien. 3 N. J. Eq. (2 Green), 14; *Jackson v. Lodge*, 36 Cal., 28; *McMillan v. Richards*, 9 id., 365; *Goodenow v. Ewer*, 16 id., 461; *Boggs v. Fowler*, id., 559; *Fogarty v. Sawyer*, 17 id., 589; *Dutton v. Warschauer*, 21 id., 609; *Bludworth v. Lake*, 33 id., 265; *Davis v. Anderson*, 1 Ga., 176; *Ragland v. Justices*, 10 id., 65; *Elfe v. Cole*, 26 id., 197; *U. S. v. Athens Armory*, 35 id., 344; *Seals v. Cashin*, 2 Ga. Dec., 76; *Hall v. Savill*, 3 Iowa, 37;

*Chick v. Willets*, 2 Kan., 384; *Caruthers v. Humphrey*, 12 Mich., 270; *Bryan v. Butts*, 27 Barb., 503; *Thayer v. Cramer*, 1 McCord, 395; *Brinkman v. Jones*, 44 Wis., 498. The deed of March 17, 1877, from defendant to Mary C. Smith, conveyed the premises to her; and by virtue thereof and of the assignment to her, on the same day, of the agreement of July 31, 1876, she became entitled to a conveyance from the plaintiff, and bound herself to make the note and mortgage in pursuance of the agreement. The deed of February 1, 1878, from plaintiff to defendant, conveyed only the plaintiff's mortgage lien acquired by the deed and agreement of July 31, 1876, that being the only interest which plaintiff then had in the premises. *Stark v. Brown*, 12 Wis., 572; *Tallman v. Ely*, 6 id., 258; *Frishe v. Kramer's Lessee*, 16 Ohio, 125; *Alden v. Garver*, 32 Ill., 32. The plaintiff having refused to convey to Mary C. Smith, the owner of the premises and assignee of the agreement of July 31, 1876, and take a note and mortgage from her, and having taken a mortgage from defendant, who was then only the assignee of the original mortgage lien, will be presumed to have waived the mortgage on the fee with the note of the assignee of the agreement, and to have elected to take the note of the defendant secured by a mortgage on such mortgage lien. The instrument in suit is, therefore, only a mortgage on a mortgage, and the judgment should have directed a sale of the original mortgage, not of the land. For this error the judgment will be reversed.

*A. A. Jackson*, for respondent:

1. The first part of the answer does not state a cause of action, and does not, therefore, amount to a counterclaim. It appears by the answer itself, that the amount paid to satisfy the judgment against the defendant was included in the note and mortgage with the full consent of the defendant; and it is nowhere alleged that this was done by mistake of either of the parties, or through any fraud on the part of the plaintiff. The settlement made by the parties is binding until it is im-

peached for fraud or mistake. *Martin v. Beckwith*, 4 Wis., 219; *Calkins v. The State*, 13 id., 389, 394, 397; *Kercheval v. Doty*, 31 id., 476; *Johnson v. Parker*, 34 id., 596; *Wilson v. Runkel*, 38 id., 526; *Murray v. Toland*, 3 Johns. Ch., 569, 574; *Lockwood v. Thorne*, 11 N. Y., 170; 2 L. C. in Eq., 269. The answer does not state facts sufficient to entitle defendant to have the note and mortgage reformed. Courts of equity will not reform written instruments where neither fraud nor mistake in the execution thereof is alleged. *Newton v. Holley*, 6 Wis., 592, 604; *Lake v. Meacham*, 13 id., 355, 362; *Fowler v. Adams*, id., 458; *McClellan v. Sanford*, 26 id., 595; *Wells v. Ogden*, 30 id., 637; *Kercheval v. Doty*, 31 id., 476, 491; *Neff v. Rains*, 33 id., 689; Story Eq. Jur., sec. 157; *Lyman v. Ins. Co.*, 17 Johns., 373; *Nevius v. Dunlap*, 33 N. Y., 676; *Story v. Conger*, 36 id., 673. If the appellant repudiates the settlement made, and seeks to reform the note and mortgage, he must offer to reconvey the premises and restore the plaintiff to the position he occupied before the settlement. *Crosier v. Acer*, 7 Paige, 137, 143. There are no facts stated in the answer to sustain the allegation that defendant was compelled by duress of estate to include in the note and mortgage the amount paid to satisfy the judgment. Duress is made up of distinct facts, and these should have been set forth. *Richardson v. Hittle*, 31 Ind., 119. It fully appears by the answer, that, by the agreement, the plaintiff had the right to pay the judgment and include the amount in the note and mortgage. The duress compelled him only to perform his agreement. To make void a written instrument there must be something different. 3 Washb. R. P., 235; Chitty on Con. (5th ed.), 206; Greenleaf's Cruise, Vol. IV, Title 32, ch. 27, sec. 11; *Barrett v. French*, 1 Conn., 354. The first part of the answer, therefore, showing no duress and no reason why the instrument should be reformed, and no facts constituting a counterclaim, there was no error in excluding evidence in support of it.

2. The notice by plaintiff of his option that the principal sum of the note should become due, was not premature. Interest was due July 1, 1878, and was not entitled to grace. Our statute (R. S. 1858, ch. 60, sec. 5; R. S., sec. 1680) adopts the commercial law. By custom of merchants, days of grace were never allowed except upon payments of the principal sum. No case declares the maker of a note entitled to grace on the payment of installments of interest.

3. If the second and separate defense is intended as an answer in the nature of a demurrer to the jurisdiction, it needs no argument to show that the court has jurisdiction of the subject matter. If it is an answer in the nature of a demurrer for defect of parties defendant, in that Mary C. Smith was not made a party, the answer itself shows that she was neither a necessary nor a proper party. It sets up title in her by virtue of a deed from the defendant March 17, 1877, at a time when the defendant had no title to the lands and when the plaintiff held the absolute title under the deed of July 31, 1876, in which Mary C. Smith joined. Her title, if any, acquired by such deed from the defendant, would have inured to the plaintiff. 2 Washb. R. P., 254; 3 id., 407; Herman on Estoppel, sec. 273 et seq. If her interest was acquired prior or is paramount to the mortgage, as the answer alleges, she is neither a necessary nor a proper party. *Strobe v. Downer*, 13 Wis., 10; *Pelton v. Farmin*, 18 id., 222; *Roche v. Knight*, 2 id., 324; *Roberts v. Wood*, 38 id., 60, 68; *Corning v. Smith*, 6 N. Y., 82. The defendant is estopped from showing title in another, by the recital, in the agreement of July 31, 1876, that he and Ford are joint owners of the premises. *Woodman v. Clapp*, 21 Wis., 350; *Mackey v. Stafford*, 43 id., 653; *Lainson v. Tremere*, 1 Ad. & El., 792; *Bowman v. Taylor*, 2 id., 278; *Rees v. Lloyd*, Wightwick, 123; *Jackson v. Parkhurst*, 9 Wend., 209; *Lee v. Clark*, 1 Hill, 56; *Carver v. Jackson*, 4 Pet., 83; *Van Rensselaer v. Kearney*, 11 How., 297, 325; *French v. Spencer*, 21 id., 228; Herman on Estop., sec. 238.

A similar estoppel results from the covenants of the deed of July 31, 1876. *Wilkinson v. Scott*, 17 Mass., 249; *Duchess of Kingston's Case*, 2 Smith's L. C. 573; *Goodtitle v. Bailey*, Cowp., 597; 3 Washb. on R. P., 91. Also from the covenants of the mortgage in suit. *Barber v. Harris*, 15 Wend., 615; *Avery v. Judd*, 21 Wis., 262.

4. The deed and agreement of July 31, 1876, do not constitute a mortgage. The essential elements of a mortgage are lacking. The deed was in no case to become void. The relation of debtor and creditor was not created by the agreement, and did not exist until the making of the note and mortgage in pursuance of the agreement. The agreement was in the nature of a contract of sale and resale. This was the intention of the parties, expressed in unambiguous terms. The court will carry out their intention, and not make a new contract for them. *Cornell v. Hall*, 22 Mich., 377, 383; *Goodman v. Grierson*, 2 Ball & Beat., 274; *Conway's Ex'r v. Alexander*, 7 Cranch, 218; *Robinson v. Cropsey*, 2 Edw., 138; *S. C.*, 6 Paige, 480; *Glover v. Payn*, 19 Wend., 518; *Brown v. Dewey*, 2 Barb., 28; 4 Kent's Comm., 144 and notes.

COLE, J. Without doubt, the circuit court excluded the evidence in support of the first defense or counterclaim because it presented no case entitling the defendants to relief. In that view of the answer we fully concur. It is claimed by the learned counsel for the defendants *J. Maurice Smith* and wife, that the note and mortgage sought to be foreclosed were not voluntarily made; that they were executed under a species of duress or compulsion, so as not to be the free act of the mortgagors. But this claim, as it appears to us, is overwhelmingly disproved by the allegations of the answer. The answer sets out the agreement entered into between the plaintiff and *J. M. Smith* and wife, bearing date July 31, 1876. By the express covenants of this agreement, *Smith* and wife bound themselves to execute a note and mortgage to the plaint-

iff upon the undivided one-half of the premises described, to secure the amount paid out by the plaintiff in the construction and furnishing of the building which the parties contemplated and provided should be erected. There is surely no pretense that this agreement was not freely and voluntarily executed; and the note and mortgage in suit were given merely in accordance with its terms. It is futile to claim that the note and mortgage were executed under duress or compulsion, in view of these matters in the answer.

But it is said that if the note and mortgage were not void *in toto*, they should be reformed upon the facts stated, and the amounts stipulated in them to be paid should be greatly reduced. The most considerable item which it is insisted was wrongfully included in these securities, is the judgment in favor of the *United States v. J. Maurice Smith et al.* in the U. S. circuit court for the western district of Wisconsin. But the agreement before referred to provides that, in case *Smith* should be unable to cause that judgment to be set aside and discharged, and the plaintiff should be of the opinion that it was necessary, for the purpose of securing the leases mentioned, that this judgment should be discharged of record, then he had the right to pay and satisfy the judgment, and to include the amount paid by him for that purpose, with interest, in the note and mortgage which it was agreed should be given. This right to discharge the judgment is provided for in language so clear as to leave no room for doubt upon the subject. As the plaintiff was thus plainly authorized to pay that judgment if he deemed it necessary to do so in order to protect his rights, and include the amount paid in his statement of expenditures upon the property, there is no ground for excluding that sum from the amount of the mortgage debt. It certainly does not lie in the mouth of the mortgagors to insist that it should be deducted from the mortgage debt, in the face of their clear, positive and explicit stipulations, more than once repeated in the agreement, that it might

be included in the note and mortgage, provided, in the opinion of the plaintiff, it became necessary to pay the judgment for the protection of his interest in the building and premises; and for the purpose of perfecting the title to the property, and to secure his interest therein, it seems that he considered it necessary to discharge this judgment, and did actually pay it in December, 1876, as he had the undoubted right to do. It is further alleged in the answer, that, "under a like duress and compulsion," the defendants were compelled to allow the plaintiff to include in the note and mortgage the unnecessary expense of laying a marble, instead of a wood, floor, in the room leased to the United States for a post-office; and also the expense of finishing off a part of the building for the city offices, amounting together to nearly $800.

No satisfactory explanation or reason is assigned in the answer for allowing these claims when the note and mortgage were executed, February 1, 1878, if they were really unjust and improper. At that time the parties had an accounting and settlement of the moneys due the plaintiff according to the contract. This is an irresistible inference from the answer. It is true, at the outset of the answer there is the general charge that the plaintiff, holding the title to the real estate, refused to convey the same as he had agreed to do, unless the defendant would include in the note and mortgage the unjust and fraudulent claims for money unjustly and fraudulently expended, or claimed to have been expended, upon the property, and so, by duress of estate and not of his own free will, the defendant was forced to include in the note and mortgage the sum of $1,802.25, or thereabouts, in excess of the amount actually owing by the defendant on the agreement; and that the note and mortgage were made to extricate the title from the unjust grasp of the plaintiff, and as the only means of so doing, except by litigation.

We have already seen that the judgment of $1,000 was rightly paid; that the defendants could not be relieved from

including that in the note and mortgage; and in respect to the other claims, for putting down the marble floor and finishing off the rooms for the city offices, the answer is barren of all facts which tend to show that any duress or coërcion, in the proper sense of the word, was used to compel the defendants to allow them. According to the answer, the defendants were induced to consent that these claims should be included in the note and mortgage "under like duress and compulsion" to that which influenced them to include the judgment. Without spending any further time upon this point, we will say that there is nothing stated in the answer which would justify a court in setting aside the accounting and settlement made when the note and mortgage were executed. Manifestly the matters stated in the answer do not impeach the settlement either for fraud or duress.

The note and mortgage bear date February 1, 1878, are given to secure the payment of $6,663.25, five years from date, with interest thereon at the rate of ten per cent. per annum, payable quarterly, on the first days of January, April, July and October, in each year. There is a condition in the mortgage to the effect that in case of the non-payment of any sum of money, either principal or interest, insurance or taxes, at the time or times they should become due agreeably to the terms of the note and mortgage, or within ten days thereof, the whole amount of the principal sum secured by the mortgage should, at the option of the mortgagee, be deemed to have become due, and the same, with interest thereon, should be collectible in an action at law, or on foreclosure of the mortgage, in the same manner as if the whole principal had been made payable at the time when any default should occur. There was a default in the payment of the interest due on the first day of July, 1878; and on the twelfth day of that month the plaintiff exercised his option by giving notice to the defendant *J. M. Smith* that he elected to have the whole principal sum due.

The next question to be considered is, Had the plaintiff the

right to exercise the option given him at the time and in the manner he did? On the part of the defendants it is insisted that the interest was not due and payable on the first day of July, because days of grace, by the law merchant, were allowed for its payment. If this position is correct, notice of the option was prematurely given. We have not been referred to any authority which holds that days of grace are allowed on interest payable as this was, while there are some intimations in the books adverse to this view. Thus in *National Bank of North America v. Kirby*, 108 Mass., 497, the question before the court was as to what effect the failure to pay interest should have upon the credit of a note which was payable four years from date, with interest payable annually. COLT, J., in delivering the opinion of the court, says: "Interest is an incident of the debt, and differs from it in many respects. It is not subject to protest and notice to indorsers, or to days of grace, according to the law merchant." p. 501.

In *Catlin v. Lyman*, 16 Vt., 44, an action was brought to recover a year's interest on a note payable ten years from date, with annual interest. It was held that the action might be immediately brought if the interest was not paid on the day fixed. When a bill or note is payable in installments it is entitled to grace on each installment, for the reason that it is considered and treated as so many instruments in one form. *Oridge v. Sherborne*, 11 M. & W., 374.

In *Coffin v. Loring*, 5 Allen, 153, BIGELOW, C. J., says: "We suppose the rule to be well settled by uniform commercial usage, that when a note, or an installment of a note, bearing interest, becomes due on a certain fixed day, both the principal and interest are payable on the same day; that is, after the expiration of the three days allowed for grace. The interest, being a mere incident of the principal, follows the latter, and becomes payable at the same time. . . . Whether the same rule would apply if no part of the principal, but only the interest, on the debt had fallen due on the first day of the

month, we are not called on to determine in the present case."
p. 154.

In the light of these authorities we are inclined to hold
that the interest became due on the first day of July, and
that the defendant *Smith* was not entitled to days of grace
for its payment. The plain object of these provisions is to
secure the prompt payment of interest, and we think the
plaintiff might exercise his option and give notice on the
twelfth of the month that he elected that the principal sum
should be due. These conditions are held to be valid, and are
not treated as being in the nature of a penalty or forfeiture.
*Basse v. Gallegger*, 7 Wis., 442; *Marine Bank v. International
Bank*, 9 Wis., 57; *Rosseel v. Jarvis*, 15 Wis., 633; *Schooley
v. Romain*, 31 Md., 574; *Rubens v, Prindle*, 44 Barb., 336.

It is insisted that the plaintiff had no right to exercise his
option, because he had rendered no statement as to the
amount of interest due after applying the rents which he
was authorized to collect. It is a sufficient answer to this ob-
jection to say that the defendant *J. M. Smith* must have
known that, if all of the rents were applied to the payment of
interest, there would still be due on the first of July, 1878,
$27.63. Moreover, in order to protect his mortgage and make
it good security, the plaintiff was compelled to pay taxes and
insurance, which the defendant himself had agreed to pay.
The defendant's obligation to keep the property insured for
the benefit of the plaintiff, and pay the taxes, was as binding
as the covenant to pay the principal sum secured; and a fail-
ure to perform that covenant was a default, within the mean-
ing of the mortgage, as much as a failure to pay the interest.

In what is called the second defense in the answer, certain
matters are stated for the evident purpose of showing that
Mary C. Smith, a sister of the defendant *J. M. Smith*, is
really the owner of the property, and should be made a party
to the action. It is alleged that the plaintiff obtained a tax
title on the property in 1874, and soon thereafter conveyed

his interest under the tax deed to Mary C. Smith.  For years prior to this time *J. M. Smith* claimed to be the owner and in possession of the property under a deed from O. B. Mattison, dated April 17, 1867, and of course was bound to pay the taxes for the nonpayment of which the property was sold in 1871.  But on the 31st day of July, 1876, at the date of the agreement before referred to, Mary C., together with *J. M. Smith* and wife, conveyed, by deed of warranty, the property to the plaintiff, to perfect in him a good and sufficient title, in fee simple to an undivided one-half of the property, free from all liens and incumbrances except the judgment in favor of the United States, in compliance with the covenants in that agreement.  In March, 1877, *J. M. Smith* and wife conveyed their interest to Mary C. Smith, and assigned to her the agreement of July '31, 1876.  Afterwards they executed the note and mortgage in suit.  Now it is said that the effect of these various instruments and conveyances was to make Mary C. the real owner of the equity of redemption.  But whether that was so or not we shall not inquire, nor enter at all into the question as to the effect of these various transactions.  It is sufficient to say that if the position of counsel is correct as to them, it really affords no reason why this mortgage, given by *J. M. Smith* and wife on the property, should not be foreclosed as to them.  In the mortgage itself, *J. M. Smith* covenants to defend the title against all claims, and he is therefore clearly estopped from saying here that his sister has a title which defeats the mortgage.  But, further, we remark that if Mary C. Smith has any interest whatever in the property — a question we do not feel called upon now to consider, — certainly it is one prior and paramount to the mortgage, and her rights will not be affected by the foreclosure, to which she is not made a party.  This is all we deem it necessary to say as to the second defense.

*By the Court.* — The judgment of the circuit court is affirmed.