# IN THE COURT OF APPEALS OF IOWA

No. 20-0524
Filed June 16, 2021

THE SECURITY NATIONAL BANK OF SIOUX CITY, IOWA as the duly appointed Personal Representative of the ESTATE OF ROGER E. RAND,
    Plaintiff-Appellee,

vs.

FRANK H. WELTE II, DIANE WELTE, WELTE FLATS FARMS, INC., BJM, INC., WESTERN SLOPES FARMS, and VALLEY FLATSFARM, INC.,
    Defendants-Appellants,

and

MATTHEW WELTE, CLAIRE J. WELTE, JR., as Trustee of the VERA T. WELTE TESTAMENTARY TRUSTEE DATED OCTOBER 7, 2008, and filed with the Clerk of the District Court of Woodbury County, Iowa, on April 13, 2009, COMMODITY CREDIT CORPORATION, SHERYL GOODENOW f/k/a SHERYL WELTE and KRUGER SEEDS, INC.,
    Defendants.
_____

Appeal from the Iowa District Court for Woodbury County, Patrick H. Tott, Judge.

Appellants appeal the district court's ruling for plaintiffs in a mortgage foreclosure action. **AFFIRMED AND REMANDED.**

Robert B. Deck, Sioux City, for appellant.

Daniel L. Hartnett and Marci L. Iseminger of Crary, Huff, Ringgenberg, Hartnett & Storm, P.C., Sioux City, for appellee.

Considered by Vaitheswaran, P.J., Greer, J., and Danilson, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2021).

**DANILSON, Senior Judge.**

Appellants appeal the district court's ruling for plaintiffs in a mortgage foreclosure action. We conclude the court did not abuse its discretion in denying Frank Welte's motion for a continuance. We also conclude the district court properly applied the dragnet clause and determined the proper amount owed by the appellants. In respect to the evidentiary issues, the parties agree this is an action in equity, and although the district court ruled on objections during the bench trial, the rulings on objections do not merit a new trial. Accordingly, we affirm but remand for further proceedings as may be necessary related to the foreclosure action.

### I.      Background Facts & Proceedings

This case is a mortgage foreclosure action involving three promissory notes, two mortgages, and multiple parties. Many of the same parties were earlier involved in a replevin action involving farm-related personal property. *See Security Nat'l Bank v. Welte*, No. 17-0907, 2018 WL 6120206, at *1 (Iowa Ct. App. Nov. 21, 2018).

In the earlier case we noted, "[Roger] Rand made various loans to Frank Welte II and his various business entities for the purpose of financing Frank's farming operation." *Id.* "Rand died on August 29, 2016, and [The Security National Bank of Sioux City (SNB)] was appointed personal representative of Rand's estate." *Id.* Rand also helped finance Frank's seed and agricultural chemical business. SNB sought to foreclose the two mortgages, and the district court

rendered judgment in favor of SNB against Frank and his business entities.[1]  We will recite additional facts as we address each issue.

The appellants raise three issues: (1) the court erred in denying Frank's request of a continuance of the trial; (2) the district court erred in applying the mortgage dragnet clause; and (3) the court erroneously ruled on several evidentiary issues.

## II.    Standard of Review

Both parties agree this is an action in equity, notwithstanding the fact that the court ruled on objections during the bench trial.  We determine the case was tried in equity and our review is de novo.  *See* Iowa R. App. P. 6.907.  We give weight to the factual findings of the district court, especially when considering the credibility of witnesses, but are not bound by those factual findings.  Iowa R. App. P. 6.904(3)(g).

## III.    Continuance

SNB filed a petition for foreclosure against defendants on March 24, 2017, and trial was scheduled for October 17, 2018.  On August 6, 2018, SNB filed a motion to continue the trial.  The court granted the motion and continued the trial until February 13, 2019.  Claire Welte filed a motion to continue on December 4, 2018.  The court granted this motion, and the trial was rescheduled for June 25, 2019.

---

[1] The defendant, Claire J. Welte Jr. as Trustee of the Vera T. Testamentary Trust, was not included in the judgment as a bankruptcy stay order was in effect for the trust.  Also, SNB's action against the Commodity Credit Corporation was deferred pursuant to the agreement between those two parties.

On May 15, 2019, Frank's attorney filed a motion to withdraw, and Frank consented to the withdrawal. On June 24, Frank filed a motion for a continuance for the trial scheduled for the next day, stating he did not yet have new counsel. The court granted the motion and continued the trial until August 27. The order stated, "This is a firm trial date and no further continuances will be granted."

Frank appeared pro se at the trial on August 27. He made an oral motion for a continuance, claiming he was not able to obtain legal counsel. SNB pointed out the case had been pending for two and one-half years. The court ruled:

> The Court does note that the matter was previously scheduled for trial in June of this year, and as [SNB] accurately indicates, there was a motion to continue on the eve of trial, which the Court granted due to the defendant not having counsel at that time and his desire to seek counsel. It appears that same issue remains today. But [SNB] is correct, the last order indicated that that would be a final continuance for that reason and so the Court's going to deny the additional request for continuance at this time, and we will proceed towards trial on this petition.

Frank claims the district court abused its discretion by denying his motion for a continuance. He states he tried to obtain new counsel in a timely manner but was unsuccessful. He also points out that SNB earlier requested a continuance, which was granted by the court.

"We review a district court's denial of a motion for continuance for abuse of discretion." *Carter v. Carter*, 957 N.W.2d 623, 631 (Iowa 2021). "A party challenging a denial of a motion for continuance carries a heavy burden." *Id.* "An abuse of discretion occurs when the 'decision is based on a ground or reason that is clearly untenable or when the court's discretion is exercised to a clearly unreasonable degree.'" *Anderson v. Anderson Tooling, Inc.*, 928 N.W.2d 821, 826 (Iowa 2019) (citation omitted).

Frank's attorney withdrew on May 15, and Frank had more than three months, until August 27, to obtain new counsel. He requested a continuance on the eve of the trial scheduled for June 25, and the court granted his request, but two months later he was still not represented by counsel. Also, this was the fourth trial date, and Frank had consented to his attorney withdrawing from representing him. Frank had been granted one prior continuance, he had been warned there would be no further continuances, and his last request was made the day of the trial.[2] We find the district court did not abuse its discretion in denying Frank's oral motion for a continuance.

**IV.    Dragnet Clause**

**A.**    First, Frank contends there is insufficient evidence to support the district court's conclusion that the disbursements above the principal amount of the notes should be subject to the same terms of the note.

The district court found:

> Mr. Rand never made a disbursement to the Defendants for the face amount of any of the notes in question. On the contrary, Mr. Rand made a series of smaller disbursements to the Defendants over the course of several months surrounding each of the notes. Of particular import, the interest terms for each of the notes were identical. Each provided for an initial interest rate of 8% which increased to 12% either as a default interest rate or after 9 months in regards the first loan. As the initial interest rate for each note began at 8%, it is clear that the parties' intent would have been that any additional sums loaned would have also been at an initial rate of 8% followed by a default rate of at least 12%. [Plaintiff's expert] in his report has computed the per diem accrual of interest based on these rates, with the exception of the interest on the first loan which specifically provided for a default rate of 16%. Based on this

---

[2] We observe without further comment that the motion to withdraw only sought to withdraw in representing Frank and neither the motion to withdraw or the order granting the motion permitted counsel to be relieved from representing the other four defendants.

evidence, the Court finds that interest rate set forth in the notes of 8% followed by a default rate of 12% should apply to the amounts advanced by Mr. Rand in excess of the amounts stated in the Promissory Note documents.

The district court and SNB's expert relied upon the interest rates reflected in all the promissory notes in evidence to conclude the intent of the parties was that the same interest rate would apply. Although the evidence was not overwhelming, no evidence controverted this conclusion. Moreover, the pattern of business transactions between the parties would support the district court's conclusion. This conclusion is also supported by the fact the amount of the principal identified in each promissory note was dispersed in multiple payments, not in single disbursements. We agree with the district court's conclusions on this issue.

**B.** Frank also contends the dragnet clause should not be construed to permit the disbursements under the 2013 promissory note and the 2014 promissory note to be secured by the mortgages executed in July 2015. He claims SNB is attempting to use dragnet clauses in the mortgages to bring prior promissory notes within the ambit of the mortgages. He asserts that for the terms of the mortgages to apply to the prior promissory notes, this should have been expressly stated in the mortgages.

A dragnet clause in a mortgage covers future advancements of loans. *Freese Leasing, Inc. v. Union Tr. & Sav. Bank*, 253 N.W.2d 921, 923 (Iowa 1977). "Dragnet clauses are not favored in equity. Our cases say they should be carefully scrutinized and strictly construed." *Id.* at 925. Dragnet clauses, "[h]owever, . . . have a proper and legitimate purpose in commerce." *Id.*

The district court determined:

> [E]ach of the loan disbursements made by Mr. Rand to the Defendants were of the "same kind and quality or related to the same transaction or series of transactions the principal obligation secured" the mortgages referenced above do secure the entire amounts owed on these notes, including the amounts advanced to redeem the one property from tax sale.

A dragnet clause may be applied if "the advances are of the same kind and quality or relate to the same transaction or series of transactions as the principal obligation secured." *Id.* at 927 (quoting *Emporia Bank & Tr. Co. v. Mounkes*, 519 P.2d 618, 623 (Kan. 1974)).

We agree paragraph 3.b of both mortgages supports incorporating all preexisting debt as well as future advances. The term "preexisting debt" in the second mortgage, dated July 17, 2015, would include all the unpaid advances provided to Frank or BJM, Inc. prior to the execution of the second mortgage. Moreover, there is no evidence enforcement of the dragnet clause related to past or future advances would be unconscionable, oppressive, or unfair as to Frank or his entity, BJM, Inc. *See First v. Byrne*, 28 N.W.2d 509, 511–12 (Iowa 1947). To the contrary, it appears the parties continued a practice of executing promissory notes and mortgages to permit Frank and his associated entities to continue business.[3] Further, the method of doing business was a consideration in determining the validity of a dragnet clause in *Brose v. International Milling Co.*,

---

[3] Each of the four promissory notes admitted into evidence references it is secured by various mortgages. Both mortgages that are the subject of this action include a dragnet clause for past and future advances. Thus, it appears Rand made every effort to be secured by mortgages for the frequent advancements given to Frank, and so long as Frank was receiving advancements, he and his entity BJM, Inc. executed new mortgages.

129 N.W.2d 672, 675 (Iowa 1964).  We conclude the dragnet clauses in the two mortgages are enforceable as to Frank and BJM, Inc.

### V.      Evidentiary Objections

Frank claims the district court abused its discretion in ruling on SNB's objections to his cross-examination of SNB's expert, Lawrence Delperdang.  He also claims the court abused its discretion by sustaining SNB's objections to his questions about SNB's exhibits.  Additionally, he asserts the court improperly denied his request to admit certain exhibits.

We review a district court's decision to admit or exclude evidence for an abuse of discretion.  *Eisenhauer ex rel. T.D. v. Henry Cty. Health Ctr.*, 935 N.W.2d 1, 9 (Iowa 2019).  "A party may claim error in a ruling to admit or exclude evidence only if the error affects a substantial right of the party."  *Id.* (quoting Iowa R. Evid. 5.103(a)).

**A.**      On cross-examination, Frank questioned Delperdang about whether some older promissory notes had been paid in full:

> Q. Even though they're paid in full, it wasn't owed at that time because that's your bookkeeping system that paid them in full.  I'm not agreeing with that is what I'm trying to say.  There's an error in your bookkeeping system.
> [Counsel for SNB]: I'm going to object that it's irrelevant.
> The Court: All right.  The objection will be sustained.

Under Iowa Rule of Evidence 5.402, relevant evidence is generally admissible, while "[i]rrelevant evidence is not admissible."  *Id.* at 17.  Evidence is considered to be relevant if "[i]t has any tendency to make a fact more or less probable than it would be without the evidence; and . . . [t]he fact is of consequence in determining the action."  *Id.* (quoting Iowa R. Evid. 5.401).

SNB was seeking to foreclose on promissory notes signed in 2013, 2014, and 2015. Frank sought to question Delperdang about earlier promissory notes from 2010, 2011, and 2012 that had been paid in full. We conclude the district court did not abuse its discretion by sustaining SNB's objection to Frank's question on the ground of relevance. *See* Iowa R. Evid. 5.401.

Additionally, Frank claims the court improperly sustained SNB's objections to his questions on the grounds the questions called for a legal conclusion. SNB objected on the ground that a question called for a legal conclusion:

> Q. The note is for how much? 848? And it has a payment of 1,016 (sic) and it's not an overpayment?
> [Counsel for SNB]: Objection, calls for a legal conclusion.
> Frank: I think that's a mathematical conclusion.
> The Court: The objection will be sustained.

Also, the following question:

> Q. We have a payment in the same year of 2.498 million—we have a loan of 2 million. We have a payment of 2.498 million. How can there be interest of 1 million when the note is paid off and there's money left over?
> [Counsel for SNB]: Objection, calls for a legal conclusion.
> The Court: All right. The objection is sustained.

Frank's questions challenged the conclusions reached by the expert, and the objections should have been overruled. *See Heinz v. Heinz*, 653 N.W.2d 334, 342–43 (Iowa 2002) (finding proper cross-examination includes the ability to challenge the expert's assumptions and conclusions). However, when we consider the record as a whole, the erroneous rulings were "minor and did not have a significant effect on the proceedings." *See Horsfield Materials, Inc. v. City of Dyersville*, 834 N.W.2d 444, 452 (Iowa 2013) (citing *Passehl Estate v. Passehl*, 712 N.W.2d 408, 414 (Iowa 2006)). Although preventing such cross-examination

would ordinarily be significant, here the questions appeared more directed to answer questions to help Frank understand the expert's testimony and eliminate his confusion. Therefore, although the court abused its discretion by ruling Frank's question called for a legal conclusion, we determine Frank was not prejudiced by the court's ruling. *See Bell v. Cmty. Ambulance Serv. Agency*, 579 N.W.2d 330, 338 (Iowa 1998) (noting testimony excluded based on a ruling it would have led to a legal conclusion would not have changed the result of the case).

**B.** Frank asked Delperdang whether Exhibit 1 was a promissory note for $1 million. SNB objected, stating "Exhibit 1 clearly indicates that the maximum principal amount is not to exceed $2 million, not $1 million." The court sustained the objection, ruling "Exhibit 1 clearly speaks for itself." The court further stated, "I can read and review the documents. They're admitted and made part of the evidence."

Frank also asked Delperdang to read from Exhibit 2, another promissory note. SNB objected on the ground the exhibit spoke for itself. The court sustained the objection, noting Exhibit 2 contained the same language was found in Exhibit 1, which had been read into the record. The court stated, "The exhibit speaks for itself." The court stated it was not necessary to read the exhibit into the record "because it's already part of the record so he doesn't have to repeat it. It's already in the record."

The court's rulings did not prohibit Frank from asking questions about SNB's exhibits. In the first ruling, the court determined Exhibit 1 spoke for itself on the issue of whether the maximum principal amount was $1 million or $2 million. In the second ruling, the court merely determined it was not necessary for a witness

to read from Exhibit 2 when an identical provision in Exhibit 1 had already been read into the record. We conclude the district court did not abuse its discretion in its rulings that the exhibits spoke for themselves. *See Eisenhauer*, 935 N.W.2d at 9 (noting we review a district court's decision to admit or exclude evidence for an abuse of discretion).

**C.** Finally, Frank claims the district court improperly ruled he could not present four exhibits. Frank attempted to introduce Exhibits 101, 102, and 103, which were pages from amortization schedules dated July 13, 2016; October 15, 2016; and May 2, 2017. Delperdang stated he did not know the source of the exhibits. SNB objected on the ground the exhibits had not been received into evidence. The court ruled the exhibits could not be admitted into evidence.

Frank also sought to introduce Exhibit 104, which was a greater portion of the original document that was the source of Exhibit 101. Exhibit 104 showed that it started on page four. Delperdang stated he could not respond to just part of a document. SNB objected to the exhibit, and the court sustained the objection.

Frank contends the court improperly ruled the exhibits could not be admitted into evidence unless they were identified by a witness. Generally, a proper foundation must be established for exhibits before they can be admitted into evidence. *See State v. Smith*, 876 N.W.2d 180, 187 (Iowa 2016). Iowa Rule of Evidence 5.901(a) states, "The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." The district court has discretion in determining whether a party has established a proper foundation. *State v. Musser*, 721 N.W.2d 734, 750 (Iowa 2006).

Delperdang was not able to identify Exhibits 101, 102, 103, or 104 because they were parts of documents, not the whole document. He stated, "You can't respond to any document that's just a part of a document." We conclude the district court did not abuse its discretion by ruling Frank had failed to establish a proper foundation for the admission of the exhibits.

## VI.    Conclusion

We conclude the court did not abuse its discretion in denying Frank's motion for a continuance. We also conclude the district court properly applied the dragnet clause and determined the proper amount owed by the appellants. In respect to the evidentiary issues, the parties agree this is an action in equity and although the district court ruled on objections during the bench trial, the rulings on objections do not merit a new trial. Accordingly, we affirm but remand for any further proceedings related to the foreclosure action.

**AFFIRMED AND REMANDED.**